UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN EDWARD MORA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>LT. WILLIAMS, et al.,<br><br>　　　　　Defendants. | Case No. 2:21-cv-02708-CJC-SHK<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |

On July 7, 2021, Plaintiff Ruben Edward Mora ("Plaintiff"), an inmate housed at Kern Valley State Prison and proceeding pro se and in forma pauperis ("IFP"), constructively filed[1] a Second Amended Complaint ("SAC") against Officer ("CO") Lt. Williams ("CO Williams"), CO M. Smith ("CO Smith"), CO Ms. Davis ("CO Davis") (collectively, "Leg Shackles Defendants"), and Counselors B. Johnson and B. Bradford (collectively, "Retaliation Defendants") in their individual and official capacities as employees of the California State Prison in Los Angeles,

///

///

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights suits filed by pro se prisoners).

California ("CSPLA"),[2] under 42 U.S.C. § 1983 ("§ 1983"). Electronic Case Filing Number ("ECF No.") 17, SAC at 6-7. For the reasons discussed in this Order, the SAC is **DISMISSED** without prejudice and with leave to amend.

## I. BACKGROUND

### A. Procedural History

On March 16, 2021, Plaintiff constructively filed a § 1983 civil rights Complaint ("Complaint" or "Compl.") against CO Williams, CO Smith, CO Davis, Warden Johnson, CO Salas, and Nurse Practitioner ("NP") Kehinde, in their individual and official capacities as employees of CSPLA, for events that allegedly occurred on July 22, 2020. ECF No. 1, Compl. Plaintiff also filed an application to proceed IFP, ECF No. 2, which the Court granted, ECF No. 4. On June 8, 2021, without seeking or being granted leave to do so, Plaintiff constructively filed a First Amended Complaint ("FAC"). ECF No 13, FAC. While the FAC was being processed, unbeknownst to the Court, the Court issued an Order Dismissing Plaintiff's Complaint with Leave to Amend ("ODLA") on June 14, 2021. ECF No. 12, ODLA. Because Plaintiff submitted the FAC before the Court issued the ODLA, it shared many of the original Complaint's flaws, so the Court provided Plaintiff an opportunity to either file a SAC to cure all flaws, including those discussed in the ODLA, or to proceed with the FAC. ECF No. 14, Order to Show Cause ("OSC"). Plaintiff filed the instant SAC on July 6, 2021, which is now the operative pleading. ECF No. 17, SAC.

Plaintiff has filed two other cases in federal court, both of which are still allegedly pending – though it appears the cases are actually pending in another federal district. Id. at 1-2, 4-5.

///

---

[2] The Court notes that the CSPLA is part of to the California Department of Corrections and Rehabilitation ("CDCR"). See https://www.cdcr.ca.gov/facility-locator/lac/ (last accessed on September 6, 2022).

2

### B. Summary of the SAC

As an initial matter, the Court notes that Plaintiff's handwriting is very difficult to read and, therefore, it sets forth Plaintiff's allegations as best as they can be discerned, and, which the Court accepts as true.

On July 22, 2020, at around 12:30 p.m., Plaintiff was brought "back from medical CTC"[3] and put into his cell with iron shackles left on his legs. Id. at 9 (capitalization normalized). Plaintiff yelled to the Leg Shackles Defendants to remove the iron shackles from his legs, but they refused to do so, and their failure to remove Plaintiff's leg shackles caused Plaintiff to fall and hit his head "really hard on the ground" and consequently suffer injuries to his head, back, and ankles ("Leg Shackles Injury"). Id. (capitalization normalized). Plaintiff was on the ground in his cell at 9:45 p.m. and was sent to the CTC medical unit where his injuries were documented after 10:00 p.m. Id. at 9-10.

Defendant Bradford came to Plaintiff's cell on October 13, 2020 and told him that his Institutional Classification Committee ("ICC") hearing would be held on October 15, 2020. Id. at 15. Plaintiff gave Defendant Bradford a written request to call witnesses at his hearing regarding the Leg Shackles Injury and told Defendant Bradford that he wanted CO Mr. Bean to be his staff representative and Plaintiff wanted to call the Leg Shackles Defendants as witnesses. Id. Defendant Bradford "was aware of the particular incident[] in question," and responded, "Oh yeah, you want to write up [my] coworkers . . . for staff misconduct?[] You'll be going to [the] ICC hearing?" Id. at 15-16 (capitalization normalized).

Defendant Johnson "took it upon himself to be [Plaintiff's] staff [representative]" and falsely claimed to have met with Plaintiff twenty-four hours prior to his ICC hearing. Id. at 16, 18, 19 (capitalization normalized). Defendant

---

[3] Plaintiff does not define the term "CTC" in the SAC and, as the Court was unable to ascertain the term's meaning, the Court does not define "CTC" here.

3

Johnson also falsely stated that Plaintiff refused to attend his hearing. Id. at 16. Owing to a write-up for profanity from July 22, 2020 that was meant to "rise up [his] points," the ICC increased Plaintiff's security classification from level III to level IV, then illegally transferred Plaintiff to a level IV facility that exposed him to a higher level of violence ("Retaliation Claim"). Id. at 16, 19 (capitalization normalized).

As a result of these allegations, Plaintiff claims that the Leg Shackles Defendants violated his civil rights under the Eighth, Fifth, and Fourteenth Amendments of the United States Constitution. Id. at 8-14. Plaintiff also claims that the Retaliation Defendants violated his Eighth and Fourteenth Amendment rights under the United States Constitution. Id. at 15-20.

In Plaintiff's prayer for relief, Plaintiff seeks: a declaration "that the acts and omissions described herein violate his rights under the Constitution and laws of the United States"; compensatory damages in the amount of $10,000 against each defendant, jointly and severally; punitive damages in the amount of $10,000 against each defendant, jointly and severally; a jury trial on all issues triable by jury; recovery of his costs in this suit; and any additional relief the Court deems just, proper, and equitable. Id. at 8 (capitalization normalized).

Plaintiff also attaches several documents to his SAC, which Plaintiff fails to explain or otherwise reference in the SAC. Nonetheless, the Court discusses them in turn below.

First, Plaintiff attaches two documents entitled "Claimant Appeal Claims Decision Response," which Plaintiff labels as "Exhibits A Appeals" and "Exhibits C Appeals" from February 2, 2021 and November 16, 2020, respectively. Id. at 21, 23. Plaintiff also attaches two memoranda entitled "Time-Expired Response from the Office of Appeals[,]" which Plaintiff labels as "Exhibits B Appeals" and "Exhibit D Appeals." Id. at 22, 24. These documents appear to be evidence of grievances related to Plaintiff's claims and state, in pertinent part, that Plaintiff's

4

1  "claim must be answered time expired" since "the Office of Appeals is not able to
2  respond to [the] claim in 60 calendar days[.]" Id. at 23-24 (capitalization
3  normalized) (internal quotation marks omitted).  Therefore "the Office of
4  Grievances['s] [disapproved decision] remains unchanged and this appeal is . . .
5  closed." Id. at 24.  Lastly, Plaintiff attaches a "Claimant Grievance Receipt
6  Acknowledgement" form from February 19, 2021, which Plaintiff did not label as a
7  separate exhibit, and which states, in pertinent part, that the California Department
8  of Corrections and Rehabilitation ("CDCR") Office of Grievances at CSPLA
9  received Plaintiff's grievance. Id. at 26.  Notably, these documents do not reference
10 any of the facts or Defendants cited in Plaintiff's SAC relating to Plaintiff's Leg
11 Shackles Injury or Retaliation Claim. See id. at 21-26.

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding IFP, the Court must screen the Complaint and is required to dismiss the case at any time if it concludes that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (affirming the dismissal of a complaint for failing to state any elements of claims for relief).

In determining whether a complaint fails to state a claim for screening purposes, the Court applies the same pleading standard from Federal Rules of Civil Procedure ("Rule") 8 as it would when evaluating a motion to dismiss under Rule 12(b)(6).  Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).  Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007)

(citation and internal quotation marks omitted). In considering whether a complaint states a claim, a court must accept as true all allegations of material fact. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal quotation marks omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation and internal quotation marks omitted). The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008) (citations and internal quotation marks omitted). "We have an obligation where the p[laintiff] is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the p[laintiff] the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted).

If the Court finds that the complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-28 (9th Cir. 2000). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; Cato v. United States, 70 F.3d 1103, 1106

(9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002) (upholding dismissal without leave to amend where additional facts did not establish elements of claim).

### III. DISCUSSION

As an initial matter, and as the Court previously stated in the ODLA, see ECF No. 12, ODLA at 6, the exhibits Plaintiff attached to his pleading do not appear to be properly before the Court because Plaintiff failed to reference these attachments in his pleading or describe their relevance to this case. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1997) (finding the Court "consider[s] only the contents of the complaint[]" because "a district court generally may not consider any material beyond the pleadings[,]" and a "document is not outside the complaint if the complaint specifically refers to the document and if its authenticity is not questioned") (citations and internal quotation marks omitted). Further, after careful review of the exhibits Plaintiff attached to his SAC, the Court finds that these documents are not relevant or helpful to Plaintiff's case. As previously discussed, the exhibits do not address any facts or context related to Plaintiff's SAC, other than the fact that Plaintiff filed appeals regarding his grievance claims and received unfavorable responses from the reviewing body. Nevertheless, because the Court cannot be certain whether Plaintiff discussed the exhibits in his SAC due to the illegibility of Plaintiff's handwriting, the Court gives Plaintiff the benefit of the doubt and considers the contents of these documents here.

Regarding the merits of Plaintiff's SAC, the Court finds that it is subject to dismissal, without prejudice and with leave to amend, for the following reasons.[4]

///

---

[4] The Court does not purport to address all the deficiencies below and, instead, addresses only the most glaring defects present in Plaintiff's SAC.

7

A. **Plaintiff Fails to State a Monell Claim Against Defendants.**

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Id. at 166. Because no respondeat superior liability, which means that the entity is responsible for the alleged bad acts of its employee, exists under § 1983, a municipality is liable only for injuries that arise from an official policy or longstanding custom. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).

Certain governmental entities, such as counties, can be sued directly under § 1983 for monetary or equitable relief where it is alleged that the entity's official or unofficial policy, custom, usage, or practice is the "moving force [behind] the constitutional violation." Id. at 690, 694. A plaintiff can establish this "municipal liability" in one of three ways. First, the plaintiff may prove that an employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (citation and internal quotation marks omitted). Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final authority to establish municipal policy" and that the challenged action itself thus constituted an act of official governmental policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986). Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Here, Plaintiff has alleged claims against the Leg Shackles Defendants and Retaliation Defendants in their official capacities. ECF No. 17, SAC at 6-7. Therefore, Plaintiff's official capacity claims against these Defendants, as

8

employees of CSPLA, are equivalent to claims against the CSPLA. See Graham, 473 U.S. at 166. Aside from the 11th Amendment issue discussed subsequently in this ODLA, Plaintiff has not made any allegations that either group of Defendants acted pursuant to an official or unofficial policy, custom, usage, or practice, let alone whether that policy was the "moving force" behind Plaintiff's constitutional violations. See Monell, 436 U.S. at 690, 694; Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). Instead, Plaintiff appears to allege isolated incidents that occurred over a brief period of time. ECF No. 17, SAC at 8-20. Therefore, Plaintiff has failed to state a Monell claim against the CDCR.

Accordingly, Plaintiff's official capacity claims against the Leg Shackles Defendants and Retaliation Defendants, as well as any potential claims against the CDCR, fail and are subject to dismissal.

### B. Plaintiff Fails to State Eighth Amendment Claims.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to provide "humane conditions of confinement" to a convicted individual, including adequate medical care and protection from undue harm, while in custody. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979). To assert a claim under the Eighth Amendment, a plaintiff must show that the prison official's actions "'meet two requirements, one objective and one subjective.'" Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 927 (9th Cir. 2021) (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (citing Farmer, 511 U.S. at 834)).

"Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities." Allen, 48 F.3d at 1087 (internal quotations omitted). "The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." Id. (citing Farmer, 511 U.S. at 834, 837). To show that the prison official was deliberately indifferent,

a plaintiff must show that the prison official acted in such a manner that the prison official knew the inmate "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 825 (internal quotation marks omitted).

Here, Plaintiff states that he suffered injuries due to Defendants' failure to remove his leg iron shackles, and that they "acted with [an] unreasonable risk of serious harm." See ECF No. 17, SAC at 10. Specifically, Plaintiff alleges that he was put into his cell with iron shackles still left on his legs after coming back from the medical unit. Id. at 9. Plaintiff alleges that he yelled to the Leg Shackles Defendants to remove the iron shackles from his legs, but they refused to do so. Id. Plaintiff asserts that the failure to remove his leg shackles caused him to hit his head "really hard on the ground" and consequently suffer injuries to his head, back, and ankles. Id. (capitalization normalized). Plaintiff's claim is based on the assertion that leaving the leg shackles on him in the cell posed an unreasonable risk of serious harm and the Leg Shackles Defendants ignored this obvious and serious danger. Id.

This failure to remove the leg shackles, however, fails to show that the Leg Shackles Defendants undertook "a substantial risk of serious harm." Farmer, 511 U.S. at 825. Though failure to remove restraints may at times form the basis for an Eighth Amendment claim, this Court cannot conclude that iron shackles remaining on Plaintiff's legs, without additional information, created circumstances that were "objectively, sufficiently serious." Id. at 825-26; see LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (requiring prisoner to shower while shackled is not cruel and unusual punishment where "the purpose of the restraints is not to injure [plaintiff] or make it difficult for him to shower, but . . . to protect staff"); Bosworth v. U.S., CV 14-0498 DMG SS, 2014 WL 2931164, at *5 (C.D. Cal. June 27, 2014) ("The use of shackles to restrain a prisoner, by itself, does not violate the Eighth Amendment.") (citing LeMaire, 12 F.3d at 1457). Plaintiff alleges only that iron shackles were left on his legs causing him to fall to the ground and injure himself.

ECF No. 17, SAC at 10. Plaintiff does not allege that there were any circumstances that presented "a substantial risk of serious harm," Farmer, 511 U.S. at 825, such as being "completely immobilized by the shackles" or that "they were excessively painful[,]" and, without more, Plaintiff does not adequately state an Eighth Amendment claim. See Bosworth, 2014 WL 2931164, at *5.

To the extent Plaintiff brings an Eighth Amendment Claim against the Retaliation Defendants, see ECF No. 17, SAC at 15, 18, such a claim fails because Plaintiff provides no factual allegations regarding how the Retaliation Defendants violated Plaintiff's Eighth Amendment rights.

### C. Plaintiff Fails to State Due Process Claims.

Plaintiff alleges that the Leg Shackles Defendants violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments and that the Retaliation Defendants violated his due process rights under the Fourteenth Amendment. Plaintiff's due process claims are without legal basis.

#### 1. Fifth Amendment Claims

"The Due Process Clause of the Fifth Amendment … appl[ies] only to actions of the federal government—not to those of state or local governments," Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001), and taking actions can only be brought against a government entity and not government employees in their individual capacities. Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n, 125 F. Supp. 3d 1051, 1078-79 (D. Haw. 2015).

To the extent Plaintiff alleges that the Leg Shackles Defendants violated Plaintiff's rights guaranteed by the Due Process Clause of the Fifth Amendment, this claim fails because Plaintiff has not alleged that he was in federal custody during the dates in which the alleged constitutional violations took place or that any of the Defendants were federal employees. See ECF No. 17, SAC at 9, 11, 13. Therefore, Plaintiff's Fifth Amendment claims fail and are subject to dismissal.

## 2. Fourteenth Amendment Due Process Claims

To the extent Plaintiff is raising a deliberate indifference claim under the Fourteenth Amendment, Plaintiff cannot make such a claim because he was a convicted inmate at the time of the injuries he allegedly sustained as a result of his legs being shackled. See Castro, 833 F.3d at 1067-68 (citation omitted) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause.").

Plaintiff, however, may assert a procedural due process claim under the Fourteenth Amendment, which protects prisoners from being deprived of liberty without the due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To state a cause of action for the deprivation of Fourteenth Amendment procedural due process rights, a "plaintiff must first establish the existence of a liberty interest for which the protection is sought." Barrera v. Los Angeles Cnty. Of California, No. 22-CV-03804-JFW-SHK, 2020 WL 4809475, at *9 (C.D. Cal. June 29, 2020) (citing Wolff, 418 U.S. at 556-57). A liberty interest may arise from either the due process clause or state law. Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992). An alleged deprivation implicates a protected liberty interest "where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Venegas v Bianco, No. 5:10-CV-01260-JLS-SHK, 2020 WL 5289932, at *9 (C.D. Cal. June 12, 2020) (quoting Brown v. Oregon Dep't of Corr., 751 F.3d 983, 987 (9th Cir. 2014)).

If a protected liberty interest is implicated, the court must determine whether the process afforded the inmate satisfies the Fourteenth Amendment by weighing the plaintiff's "private interests, the governmental interests, and the value of the procedural requirements." Mendoza, 960 F.2d at 1430 (citing Matthews v. Eldridge, 424 U.S. 319, 335 (1976)). Prisoners, however, do not have a constitutional right to a grievance procedure or to have their appeals handled in a particular manner,

Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), and due process requirements are "flexible and variable" in the prison context with administrators accorded "wide-ranging deference" in the adoption of practices they judge necessary to maintain institutional order, Mendoza, 960 F.2d at 1430 (internal citation and quotation marks omitted).

In the present case, Plaintiff avers that the Retaliation Defendants violated his procedural due process rights in connection with his ICC hearing. ECF No. 17, SAC at 15, 18. Specifically Plaintiff alleges that he was not provided the staff representative that he wanted, that he was not allowed to call witnesses regarding the Leg Shackles Injury, that his staff representative lied about meeting with Plaintiff in advance of the hearing, and that the ICC raised Plaintiff's classification from level III to level IV, which resulted in Plaintiff being transferred to a more dangerous correctional facility. Id. at 16, 19.

The specific liberty interest for which Plaintiff is seeking procedural protection is not made clear in the SAC. To the extent Plaintiff's underlying issue is that he did not receive an appropriate hearing for his grievance regarding the Leg Shackles Injury, Plaintiff has not shown the deprivation of a liberty interest.[5] This issue with how the hearing was conducted, without an underlying deprivation of a liberty interest, is not a valid claim. See Ramirez, 334 F.3d at 860. Therefore, this claim fails and is subject to dismissal.

To the extent Plaintiff's underlying issue is that his security classification was raised to a level IV, resulting in his transfer to a higher-security facility, this could potentially constitute a protected liberty interest for which procedural protections apply. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005) (finding that state inmates had a liberty interest protected by the Fourteenth Amendment in

---

[5] Plaintiff has not shown that having his legs shackled was a condition of confinement that imposed an "atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Venegas, 2020 WL 5289932.

13

avoiding indefinite assignment to state's supermax prison); Stewart v. Alameida, 418 F. Supp 2d 1154, 1165 (N.D. Cal. 2006) (finding that inmate was entitled to informal, non-adversary hearing prior to classification committee's decision to retain inmate in secure segregated unit based on his gang affiliation).

However, even if the reclassification of his security level constitutes a protected liberty interest, Plaintiff has failed to show that his due process rights were so trammeled as to overcome the "wide-ranging deference" afforded prison officials to adopt procedures they deem sufficient to maintain order and security. See Mendoza, 960 F.2d at 1430. Plaintiff has not shown, for example, whether or how his ICC hearing procedures departed from CDCR policy or custom, nor how those procedures failed to safeguard his liberty interests. See, e.g., Funtanilla v. Kelly, No. CIV.S02-1157-LKK-GGHP, 2006 WL 2583668, at *5 (E.D. Cal. Sept. 7, 2006) (finding adequate process where plaintiff received notice of the reasons for his transfer to secure housing unit and was provided an ICC hearing, though plaintiff did not attend). In fact, the SAC shows that Plaintiff *was* afforded certain procedural protections for his ICC hearing, such as receiving advance notice and being provided a staff representative (though not the one that Plaintiff desired). See ECF No. 17, SAC at 15-16, 19. Neither has Plaintiff pled any specific facts showing that his private interests were substantially negatively affected by transfer to the level IV facility, merely that it has a higher level of violence. See Mendoza, 960 F.2d at 1430 (finding that inmate's private interests were substantially affected by being placed on "dry cell watch" because the procedures were "extremely unpleasant" as compared to normal prison conditions); see also Parra v. Hernandez No. 08-CV-0191 H(CAB) 2008 WL 5765843, at *6 (S.D. Cal. July 22, 2008) ("[T]he private interest at stake must be considered in the context of the prison system, where prisoners have their liberty curtailed by definition, and thus procedural protections are necessarily more limited.").

Without more, the Court cannot conclude that Plaintiff's procedural due process rights were violated; therefore, Plaintiff's Fourteenth Amendment claims fail and are subject to dismissal.

### D. Plaintiff's Official Capacity Claims for Monetary Damages are Barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution sets out the principle of State sovereign immunity and provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. In other words, "[t]he Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (citations omitted).

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166 (citation omitted); see also Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity."). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166. This means that when an officer is accused of violating someone's constitutional rights, under § 1983, in their official capacity, the real defendant is their employer.

However, states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights claims for damages under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-66 (1989); Hafer v. Melo, 502 U.S. 21, 26-27, 30 (1991) (clarifying that the Eleventh Amendment does not bar suits against state officials sued in their individual capacities nor for prospective injunctive relief against state officials sued in their official capacities).

1   To overcome the Eleventh Amendment bar on federal jurisdiction over suits
2   by individuals against a State and its instrumentalities, either the State must have
3   "unequivocally expressed" its consent to waive its sovereign immunity or Congress
4   must have abrogated it. See Virginia Office for Prot. & Advocacy v. Stewart, 563
5   U.S. 247, 253-54 (2011); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,
6   99-100 (1984).  California has consented to be sued in its own courts pursuant to the
7   California Tort Claims Act, but such consent does not extend to consent to suit in
8   federal court.  See BV Eng'g v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396
9   (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241
10  (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a
11  waiver of the State's Eleventh Amendment immunity).  Further, the U.S. Congress
12  has not abrogated, or waived, State sovereign immunity against suits under § 1983.
13      Here, Plaintiff seeks monetary damages from Defendants.  ECF No. 17, SAC
14  at 8, 12, 14, 17, 20.  However, all Defendants are employees of CSPLA, which is
15  part of the CDCR.  Furthermore, the CDCR is an agency of the State of California
16  and, therefore, is entitled to Eleventh Amendment immunity, under the U.S.
17  Constitution.  See Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009).
18  Therefore, to the extent Plaintiff sues Defendants in their official capacity for
19  monetary damages, Plaintiff's claims are barred by the Eleventh Amendment and
20  are subject to dismissal.

### IV.   CONCLUSION

22  Accordingly, **IT IS ORDERED** that all of Plaintiff's claims are
23  **DISMISSED** without prejudice, and with one final opportunity to amend.  It is
24  further ordered that, if Plaintiff would like to continue to prosecute this action,
25  Plaintiff may file a **Third Amended Complaint ("TAC")** within **twenty-one days**
26  of this Order issuing.
27      On the first page, Plaintiff should clearly designate on the face of the
28  document that it is the "Third Amended Complaint," include the docket number

assigned to this case, and write the amended pleading on this Court's **CV-066 form**, which **the Clerk of Court is directed to mail to Plaintiff along with this Order**.

**In the body of the TAC, Plaintiff must include all claims that Plaintiff would like to pursue, even if Plaintiff previously stated them in the original Complaint.** If Plaintiff does not raise a claim in the TAC, the Court will consider it waived. Plaintiff cannot refer to the original Complaint or any other pleading, attachment, or document to state a claim in the TAC. Plaintiff cannot include in the body of the TAC any new defendants or new allegations that are not reasonably related to the claims asserted in the original Complaint.

For the claims that the Court found deficient in the above Order, Plaintiff must fix the deficiencies consistent with the Court's Order in the TAC if Plaintiff wishes to continue litigating those claims. Plaintiff should note that if Plaintiff files a TAC restating deficient claims without fixing them, the Court may not allow Plaintiff another opportunity to file an amended complaint and instead may dismiss the action. If there are claims which the Court did not find deficient, Plaintiff **must still re-plead that claim in the TAC in its entirety** if Plaintiff seeks to continue litigating the claim.

**Plaintiff is cautioned that if Plaintiff does not timely file a TAC, the Court will recommend that this action be dismissed with or without prejudice for failure to state a claim, failure to prosecute, and/or failure to obey Court orders under Federal Rule of Civil Procedure 41(b).** Dismissal "with prejudice" means that Plaintiff will not be able to bring this action in federal court again, while "without prejudice" means Plaintiff can re-file this action in this Court. If Plaintiff believes more time is necessary to file a TAC, Plaintiff may request an extension of time from the Court before the 21-day period mentioned above expires. However, the Court will only grant an extension if Plaintiff demonstrates good cause for needing more time (for example, if Plaintiff has requested police reports to

determine Defendants' names but will not receive them in time to file an amended complaint).

Plaintiff is advised that the Court's determination in this Order that the allegations in the SAC are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in the TAC that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Finally, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). **The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form.**

Dated: September 08, 2022

HON. SHASHI H. KEWALRAMANI
United States Magistrate Judge

18